1

2

3    IN THE UNITED STATES BANKRUPTCY COURT
     FOR THE DISTRICT OF PUERTO RICO

4

5    IN RE:                                    :     CASE NO. 10-03882
                                               :
6    LUIS R. MUNOZ MARQUEZ                      :     CHAPTER 13
                                               :
7         Debtor                               :
     _____:

8

9

10                               OPINION AND ORDER

11        This case is before the court upon the Amended Motion for Reconsideration of Confirmation

12   and Dismissal due to Fraud and Misrepresentations filed by Liquid Capital Exchange, Inc. (hereinafter

13   referred to as "Liquid Capital" or "Movant") on August 27, 2010 (Docket No. 37) alleging; (i) that

14   this case should be dismissed for "cause" pursuant to 11 U.S.C. §1307(c) because Luis Muñoz

15   Marquez (hereinafter referred to as the "Debtor") filed his bankruptcy petition for an improper

16   purpose and/or bad faith; and (ii) Debtor's bad faith is evidenced by his fraudulent conduct which in

17   turn consists in retaining payments from clients instead of forwarding the same to Liquid Capital as

18   per the contractual terms (Docket No. 51). Debtor filed its reply to Liquid Capital's motion on

19   September 21, 2010 arguing that; (i) Liquid Capital was duly notified of the confirmation hearing and

20   failed to file an objection to plan confirmation in conformity with P.R. LBR 3015-2(e)(1), thus the

21   plan was confirmed on July 28, 2010; (ii) confirmation binds the debtor and all creditors under the

22   terms of the plan pursuant to 11 U.S.C. §1327(a) and confirmation of the plan is *res judicata*; and (iii)

23   the amended motion for reconsideration of confirmation of plan is not the appropriate proceeding to

24   determine the dischargeability of a debt pursuant to 11 U.S.C. §523(a) (Docket No. 56).  On January

25   21, 2011, Debtor filed a Motion Requesting Entry of Order Dismissing Liquid Capital's Amended

26   Motion for Reconsideration of Confirmation of Plan and Dismissal Due to Fraud and

27   Misrepresentations (Docket No. 86). Liquid Capital filed its Opposition to Debtor's Motion for Entry

28   of Order (Docket No. 88).  For the reasons set forth below Liquid Capital's motion to dismiss the

     petition is hereby denied.

<u>Procedural Background</u>

Luis R. Muñoz Marquez filed a bankruptcy petition under Chapter 13 of the Bankruptcy Code on May 8, 2010. Debtor included Liquid Capital in Schedule F (Creditors Holding Unsecured Nonpriority Claims) as an unsecured creditor for a commercial loan incurred as co-debtor of Xerographics & Computer Systems Supplies Corp. in the amount of $40,401.00. On May 8, 2010, Debtor filed his Chapter 13 plan (Docket No. 3). On June 22, 2010, Debtor filed an amended Chapter 13 plan (Docket No. 19). On June 30, 2010, Liquid Capital filed a motion for relief of the automatic stay pursuant to 11 U.S.C. §362(d)(1) & (2) (Docket No. 20). On July 15, 2010, Debtor filed his reply to the motion for relief from the automatic stay (Docket No. 24). On July 15, 2010, the Chapter 13 Trustee filed his position regarding Liquid Capital's motion for relief from the automatic stay (Docket No. 26). On July 21, 2010, Liquid Capital filed a motion submitting certified translations of certain state court documents (Docket No. 28). On July 21, 2010, Debtor filed a motion for sanctions for violation of the automatic stay under 11 U.S.C. §362(a)(1)(6) for pursuing a post-petition state court judgment notified on July 12, 2010 (Docket No. 29). A hearing on Debtor's amended plan was held on July 21, 2010, in which the court ordered the continuation of the conformation hearing to July 27, 2010 (Docket No. 31).

The 341 meeting of the creditors was held on June 14, 2010 and was held open for twenty (20) days pending compliance with 11 U.S.C. §1308 (Docket Nos. 6 &17). The same was closed on August 6, 2010 (Docket No. 45). On July 21, 2010, Liquid Capital filed proof of claim #15-1 and amended proof of claim #15-2 for a secured claim in the amount of $40,401 based on the sale of accounts receivables. Subsequently, on July 23, 2010, Liquid Capital filed its response to Debtor's motion seeking relief from the automatic stay (Docket No. 32). On July 26, 2010, Debtor filed an objection to Liquid Capital's claim No. 15 since no evidence of security was provided to substantiate said claim (Docket No. 34). On July 27, 2010, a hearing on the motion to lift the automatic stay was held in which the court denied Liquid Capital's request to lift the automatic stay because it is an unsecured creditor as to the individual debtor (Docket No. 35). On July 27, 2010 a confirmation hearing was held by which Debtor's amended plan was confirmed and the court entered the plan confirmation Order on July 28, 2010 (Docket Nos. 36 & 37).

On August 6, 2010, Liquid Capital filed a Motion for Reconsideration of Confirmation of Plan and Dismissal due to Fraud and Misrepresentations (Docket No. 46). Debtor, on August 27, 2010, filed a motion for dismissal of the motion to dismiss for failure to comply with Section 201 of the Servicemembers Civil Relief Act of 2003 and General Orders 2004-01 and 05-09 of this court (Docket No. 50). On August 27, 2010, Liquid Capital filed an Amended Motion for Reconsideration of Confirmation of Plan and Dismissal due to Fraud and Misrepresentations arguing: (i) that there is cause under 11 U.S.C. §1307(c) to dismiss this case due to Debtor's improper purpose and/or bad faith in filing his bankruptcy petition; (ii)  Debtor's bad faith is evidenced by his fraudulent conduct which in turn consists in the following: (a) Debtor entered fraudulently into a Purchase and Sale Agreement (the "Agreement") and Personal Guaranty (the "Guaranty") with Liquid Capital two (2) months before he allegedly ceased operations with co-debtor Xerographic and Computer System Supplies, Inc. ("XeroComSys") with the intent to deprive Liquid Capital of money before ceasing operations contrary to the negotiations and agreements between the parties; (b) various invoices and letters prove that XeroComSys continued operations after July 2007, thus misrepresenting Debtor's financial condition to this court; (c) Liquid Capital relying on Debtor's untruthful representation that he was in business and operating successfully with the government agencies as his clients, provided monies pursuant to the Agreement; (d) XeroComSys and Debtor provided a sense of false security to Liquid Capital by allowing the same to file UCC filings against XeroComSys' accounts receivables; (e) Debtor retained payments from clients instead of forwarding the same to Liquid Capital as per the contractual terms; (f) Debtor filed the instant bankruptcy proceeding to avoid repercussions against his fraudulent actions against Liquid Capital; and (g) the state court had already ruled in favor of Liquid Capital but it had not rendered judgment against Debtor and co-debtor XeroComSys at the time of Debtor's bankruptcy filing (Docket No. 51, pgs. 9-10).  Subsequently, on August 31, 2010, the court denied Liquid's Capital motion to dismiss (Docket No. 46) based upon Debtor's reply at Docket No. 50 (Docket No. 52). On September 15, 2010, the court granted Debtor's objection to Liquid Capital's claim #15, given that the same was duly notified to all parties in interest and no timely replies or objections were filed (Docket No. 54).

Subsequently, on September 21, 2010, Debtor filed his reply to the Amended Motion for

3

1   Reconsideration of Confirmation of Plan and Dismissal due to Fraud and Misrepresentations arguing

2   that; (i) Liquid Capital was duly notified of the confirmation hearing and failed to file an objection

3   to plan confirmation in conformity with P.R. LBR 3015-2(e)(1), thus the plan was confirmed on July

4   28, 2010; (ii) confirmation binds the debtor and all creditors under the terms of the plan pursuant to

5   11 U.S.C. §1327(a) and confirmation of the plan is *res judicata*; and (iii) the amended motion for

6   reconsideration of confirmation of plan is not the appropriate proceeding to determine the

7   dischargeability of a debt pursuant to 11 U.S.C. §523(a) because the same must follow the strictures

8   of Fed. R. Bankr. P. 7001(6) and 4007(c) (Docket No. 56). On September 27, 2010, Debtor filed a

9   motion to withdraw the motion seeking relief for violation of the automatic stay and the court granted

10  withdrawal of said motion (Docket Nos. 58 & 59).

11        On November 24, 2010, the parties filed a joint pre-trial report (Docket No. 71). Liquid

12  Capital presented the following legal issues in the joint pre-trial report: (a) "[w]hether debtor

13  committed fraud and/or conversion of monies, which constitutes cause for dismissal of his bankruptcy

14  petition under 11 U.S.C. §1307(c);" (b) "[w]hether debtor did not file bankruptcy petition in good

15  faith as required by the Bankruptcy Code, and thus his bad faith is cause for dismissal of his

16  bankruptcy petition under 11 U.S.C. §1307(c); (c) "[w]hether this Honorable Court should dismiss

17  debtor's bankruptcy petition using its broad equitable powers under 11 U.S.C. §105 in order to

18  prevent injustice to Liquid Capital due to debtor's deceitful, dishonest, fraudulent, illegal actions and

19  misrepresentations and prevent abuse of the Bankruptcy Code; (d) "[w]hether debtor committed

20  fraud and/or conversion of monies, which constitutes exception to discharge of debt owed to Liquid

21  Capital under 11 U.S.C. §523(a);" (e) "[w]hether debtor did not file bankruptcy petition in good faith

22  as required by the Bankruptcy Code, which constitutes bad faith and an exception to discharge of debt

23  owed to Liquid Capital under 11 U.S.C. §523(a);" (f) "[w]hether this Honorable Court should grant

24  an exception to discharge of debt owed to Liquid Capital using its broad equitable powers under 11

25  U.S.C. §105 in order to prevent injustice to Liquid Capital due to debtor's deceitful, dishonest,

26  fraudulent, illegal actions and misrepresentations and prevent abuse of the Bankruptcy Code" (Docket

27  No. 71, pgs. 12-13). The legal issues the Debtor presented in the joint pre-trial report were the

28  following: (1)"Liquid Capital, a general unsecured creditor in this case, never filed an objection to

4

the confirmation as provided in P.R. LBR 3015-2(e)(1);" (2) "Confirmation binds the debtor and all creditors to the term[s] of the plan, whether or not such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan, 11 U.S.C. Sec. 1327(a). Courts have generally held that confirmation of the plan is *res judicata*;" (3) "[t]here are no grounds for dismissal under 11 U.S.C. §1307(c);" (4) "[t]he Amended Motion for Reconsideration of Confirmation of Plan and Dismissal Due to Fraud and Misrepresentations filed by Liquid Capital, docket [No.] 51, is not the appropriate proceeding to obtain a determination of non dischargeability. A timely adversary proceeding was needed. Fed. R. Bankr. P. 7001(6). Also the deadline was sixty days after the first date for the section 341 meeting of creditors. Fed. R. Bankr. P. 4007(c)" (Docket No. 71, pgs. 13-14).

On December 3, 2010, the pre-trial hearing was held in which the court inquired what exactly were the issues before the court in Liquid Capital's motion (Docket Nos. 74 & 83, pg. 6). The court asked Liquid Capital whether its motion was only a motion to dismiss, or whether it was a motion to dismiss and a request to revoke the confirmation order, or a motion to dismiss and to revoke confirmation, or set aside confirmation order and objecting to the discharge or dischargeability of a debt (Docket No. 83, pg. 6). Liquid Capital clarified to the court that the issue of revocation of a final confirmation order under 11 U.S.C. §1330 was not before the court because it was not alleging that the confirmation order was procured by fraud (Docket No. 83, pgs. 7-8). Next, the court informed Liquid Capital that for objections to discharge or dischargeability of a particular debt, the procedural vehicle which is generally, albeit special circumstances, employed is an adversary proceeding pursuant to Fed. R. Bankr. P. 7001(4) or 7001 (6) (Docket No. 83, pg. 10). The court also informed Liquid Capital that there are certain time strictures for objecting to the discharge or dischargeability of a debt. The time strictures for objecting to the dischargeability of a debt pursuant to 11 U.S.C. §523(a) are governed by the specific paragraph(s) of Section 523(a) which a party invokes as an exception to discharge and Fed. R. Bankr. P. 4007 (Docket No. 83, pgs. 10-11). Liquid Capital consented that the issue before the court is a motion to dismiss for bad faith, particularly for fraud (Docket No. 83, p. 12). The court concluded the pre-trial hearing by scheduling a one day trial after April 2011.

1    On January 21, 2011, Debtor filed a motion requesting entry of Order Dismissing Amended

2    Motion for Reconsideration of Confirmation of Plan and Dismissal Due to Fraud and

3    Misrepresentations arguing the following: (i) confirmation binds the debtor and all creditors under

4    the terms of the plan pursuant to 11 U.S.C. §1327(a) and confirmation of the plan is *res judicata*; (ii)

5    revocation of the confirmation order pursuant to 11 U.S.C. §1330, as provided under 11 U.S.C.

6    §1307(c)(7) is not in controversy because the confirmation order was not procured by fraud (Docket

7    No. 83, pg. 7); (iii) Fed. R. Bankr. P. 7001 needs to be addressed for a request for "...dismissing

8    debtor's bankruptcy petition due to fraud and misrepresentation;" and (iv) Fed. R. Bankr. P. 7001 and

9    4007(c) must be followed for a procedure requesting determination of dischargeability of a particular

10   debt pursuant to 11 U.S.C. §523(a)(2), (4) & (6); and (v) Liquid Capital's motion to dismiss is a

11   request for nondischargeability of its debt pursuant 11 U.S.C. §523(a)(2)(a) which had to be timely

12   filed via an adversary proceeding pursuant to Fed. R. Bankr. P. 7001 and within sixty (60) days after

13   the first date set for the 341 creditors' meeting in conformity with Fed. R. Bankr. P. 4007(c) (Docket

14   No. 86). On March 1, 2011, Liquid Capital filed its Opposition to Debtor's Motion for Entry of Order

15   whereby it incorporated the same legal arguments it had presented in its Amended Motion of

16   Confirmation of Plan and Dismissal Due to Fraud and Misrepresentations at Docket No. 51 (Docket

17   No. 88).

18                                                    Facts

19   On May 9, 2011, an evidentiary hearing was held in which the court stated that the only issue

20   before it was the dismissal of the case due to Debtor's bad faith in filing the bankruptcy petition

21   pursuant to Section 1307(c). Liquid Capital's allegations of bad faith are based on the alleged fraud

22   committed by Debtor against Liquid Capital. The court also stated that it was uncontested that Liquid

23   Capital has  a valid general unsecured claim for the amount requested in the proof of claim and that

24   Debtor has a confirmed plan in which the unsecured claims will be treated according to the terms of

25   the plan. In addition, the court stated that it was accepting the uncontested facts included in the joint

26   pre-trial order (Docket No. 71). The court also found that Debtor's and Movant's issues of fact were

27   mostly uncontested, with the exception of Liquid Capital's issues of fact (j) and (m) of the joint pre-

28   trial order (Docket No. 71, pg. 7). Movant's contested issue of fact (j) was that, "Debtor did not notify

those clients that they should be paying Liquid Capital directly as agreed upon; and contested fact (m) is that, "Debtor's keeping the monies that belong to Liquid Capital is theft, also known as fraud." (Docket No. 71, pg. 7). The court further stated that most of the facts included in the Amended Motion for Reconsideration of Confirmation of Plan and Dismissal due to Fraud and Misrepresentations are uncontested except for part of paragraph 11, which states that, "Debtor fraudulently, illegally and dishonestly converted monies that did not belong to either him or XeroComSys to the benefit of both. In essence, either the corporation or debtor was paid twice for the services." (Docket No. 51, pg. 3). The court clarified that it is not questioning Movant's admitted fact (j) of the pre-trial order; namely whether the financing statements are genuine, but the court has previously held that the same failed to establish that Liquid Capital has a secured claim because the financing statements are not duly stamped as having been filed and received by the Puerto Rico Department of State (Docket No. 71, pg. 2).

At the evidentiary hearing, three (3) witnesses testified; namely, (i) Alfredo Machado Zingg; (ii) Iris Aileen Arrieta also known as Lynn Arrieta; and (iii) Debtor Luis R. Muñoz Marquez (Docket No. 92).

*Testimony of Alfredo Machado*

Alfredo Machado, president of Effective Business Solutions which is the franchise holder of Liquid Capital Corporation of America in Puerto Rico, testified that part of his duties and responsibilities was supervising the generation of factoring of transactions in the territory of Puerto Rico. Mr. Machado explained that factoring is a purchase sale agreement between the client and Liquid Capital through which they purchase accounts receivable as a form of financing for companies that need working capital. Mr. Machado further testified that Liquid Capital only has dealings with corporations and that it performs a certain amount of due diligence by which it ensures that; (1) the debtor is a bona fide debtor; (2) that debtor has a good credit standing and (3) that the client (the person) from whom it purchases the invoices has a reasonable credit standing. Mr. Machado explained that Mr. Muñoz contacted him around May 2007 to procure their services because he had a cash flow problem due to many receivables out on the street and needed to improve his working capital position. Mrs. Arrieta and Mr. Machado paid Mr. Muñoz a visit and explained the program

and clarified that the transaction was not a loan, but a sale purchase agreement in which Liquid Capital buys the accounts receivables with recourse.  Mr. Machado explained that Liquid Capital entered into a sale purchase agreement of XeroComSys' invoices because according to their due diligence; (1) XeroComSys did not have any liens against it registered in the State Department; (2) Mr. Muñoz's credit as principal of the company was reasonable; (3) there appeared to be inventory when the facilities were inspected; (4) a Dunn & BradStreet Report was run on the company; and (5) the credit approval in Toronto agreed to open an account for him. Mr. Machado informed the court that Mr. Muñoz on behalf of XeroComSys signed the sale and purchase agreement as its President and Secretary on March or April of  2007.  He also testified that Mr. Muñoz signed a standard personal guaranty which is required by Liquid Capital as standard operating procedure to open a factoring account. Mr. Machado also explained that another standard operating procedure employed by Liquid Capital is the notice of assignment by which it informs the debtors (of XeroComSys) that the invoices have been purchased and payment must be directed to Liquid Capital. Admitted Exhibits C, D, and E constitute notices of assignment of accounts receivables by Liquid Capital addressed to different governmental agencies of Puerto Rico. The dates of the five (5) notices of assignment range from April 24, 2007 through March 25, 2008.

Mr. Machado further stated that Mr. Muñoz contacted Mrs. Arrieta and himself around June or July 2008 and informed them that he had received and deposited the checks of the assigned accounts and the monies had been spent contrary to the terms of the sale and purchase agreement. Mr. Machado identified Exhibits G and T as a schedule of estimated payments prepared by Mr. Muñoz dated July 10, 2008 and signed by Mr. Muñoz. The total amount of monies Mr. Muñoz had to refund Liquid Capital as of July 10, 2008 was $68,716.15. Subsequently, Liquid Capital filed a state court complaint (Exhibit H) against Debtor and XeroComSys for collection proceedings because Mr. Muñoz failed to comply with the payment plan.

Mr. Machado further testified that he was present at the first meeting of creditors in which Mr. Muñoz stated that he was thinking of closing operations in July 2007. Mr. Machado found this statement odd because Mr. Muñoz had contracted with Liquid Capital recently before July 2007.  Mr. Machado testified that Mr. Muñoz failed to notify him that XeroComSys had ceased operations in

8

July 2007. He further testified that it was very important for XeroComSys to stay in business for years after entering into the sales and purchase agreement since otherwise Liquid Capital would not have done business with XeroComSys.

Mr. Machado testified that he had no doubt regarding the validity of the invoices that form part of Exhibit F which are dated after July 2007 because Mrs. Arrieta would call the companies and confirm the invoices. Mr. Machado stated that Liquid Capital purchased the invoices which are dated early 2008 and that he was under the impression that XeroComSys was still in business. Mr. Machado testified that the invoices Liquid Capital purchased after 2007 from XeroComSys that have not been paid are true invoices. Mr. Machado also testified that it is part of their standard operating procedure to request payment of the invoices directly from the debtors through the notification of assignment. He further testified that Liquid Capital has not filed any action against the debtors (the governmental agencies) for not paying directly to Liquid Capital.

*Testimony of Lynn Arrieta*

Iris Aileen Arrieta Sepulveda (also known as Lynn Arrieta), Vice President of Effective Business Solutions, testified that her duties and responsibilities include customer service, support and sales. Mrs. Arrieta stated that Mr. Muñoz contacted Liquid Capital in April or May of 2007 because XeroComSys had cash flow problems. Mrs. Arrieta also testified that she had faxed the notices of assignment to the different governmental agencies (Department of Health, State Department and Department of Health-OCASET) and had called the different customers (companies) to confirm the invoices. Mrs. Arrieta stated that the Schedule of Accounts for XeroComSys (Exhibit O) is a document which reflects the monies that were paid to Mr. Muñoz for certain invoices which are listed in said document which is signed by Mr. Muñoz. Mrs. Arrieta stated that Liquid Capital did not receive any direct payment from the different entities. She also testified that she called many times the Accounts Payable Departments of the different entities and that at the beginning they did not tell her anything but then they informed her that they had paid. Mrs. Arrieta stated that she called Mr. Muñoz to follow up regarding the payment from the different invoices but that at the beginning he stated that he had not received the payment. However, Mr. Muñoz called later to notify that he had the monies and to arrange a meeting. Mrs. Arrieta testified that Mr. Muñoz at the meeting informed

9

Mr. Machado and herself that he had received the monies and deposited in the account and had spent the monies in the company contrary to the stipulations in the purchase and sale agreement. Mrs. Arrieta further testified that it was important for XeroComSys to stay in business for years subsequent to the sale and purchase agreement because Liquid Capital had bought all of the invoices.  Mrs. Arrieta also stated that Mr. Muñoz did not notify her that XeroComSys had ceased operations three (3) months after the sale and purchase agreement was signed (executed). Mrs. Arrieta testified that at the beginning of the payment plan, Mr. Muñoz made various payments by check. She stated that the balance was originally $68,000 and now it is approximately $40,000 plus the additional fee.

Mrs. Arrieta further testified that she had no doubt as to the integrity of the invoices dated subsequent to July 2007 because she had called the different entities to confirm the invoices.  She also testified that she had received invoices from XeroComSys until the year 2008.  Mrs. Arrieta stated that she did not sent a collection letter to the different governmental agencies and to XeroComSys' clients.

*Testimony Luis Muñoz Marquez*

Mr. Luis Muñoz Marquez testified that he has been employed as a salesman with Double S Stationary doing business as the Office Shop since January 2009. He stated that he earns monthly about $3,000 to $4,000 on average on commission plus social security benefits of $1,553. Mr. Muñoz stated that he is XeroComSys President and Secretary and that the company exists but it currently has no assets and has ceased operations. Mr. Muñoz testified that he signed the sale and purchase agreement with Liquid Capital on April 25, 2007 and that he also signed the Corporate Resolution as XeroComSys' Secretary and President (Exhibit A).

Mr. Muñoz testified that he is the principal of XeroComSys and its only stockholder.  He stated that his son, Mr. Luis R. Muñoz Villanueva is listed as Secretary of XeroComSys in the Profitable Corporate Annual Report filed with the Department of State for the years 2006 and 2007 (Exhibits V & U). Mr. Muñoz stated that his son, Mr. Luis R. Muñoz Villanueva, used to work for him, and if he was not there to sign documents that needed to be filed,  he would sign the documents himself.  Mr. Muñoz testified that Liquid Capital purchased from XeroComSys established accounts receivables and got paid for the same. He also stated that according to the sale and purchase

10

agreement, XeroComSys' clients had to pay directly to Liquid Capital.  However, if XeroComSys got paid for the factored accounts receivables then the monies had to be turned over to Liquid Capital within forty-eight (48) hours according to the sale and purchase agreement.  Mr. Muñoz testified that for the first transactions that he had with Liquid Capital he or XeroComSys turned over the monies received by its clients to Liquid Capital. Mr. Muñoz further testified that the monies for the invoices included as part of Exhibit F were received by XeroComSys but the monies were not turned over to Liquid Capital. Mr. Muñoz further stated that the checks received from the clients regarding the invoices (Schedule F) were deposited in XeroComSys account but the same was overdrawn and the bank took the money.  Thereafter he made a payment plan with Mr. Machado and Mrs. Arrieta.  Mr. Muñoz testified that six months prior to closing, the monies from the accounts receivable were being deposited in a bank account instead of being forwarded to Liquid Capital.  Mr. Muñoz stated that he made an honest mistake regarding the date his business ceased operations (Exhibit Q, pgs. 43-44). Mr. Muñoz stated that he did notify his clients that payments must be made directly to Liquid Capital by putting a rubber stamp on the invoices. However, most of his clients are government agencies that do not make payment to third parties. Mr. Muñoz stated that at the beginning of the relationship with Liquid Capital he was paying them, and that it was at the end that he wasn't paying them. He stated that after he closed operations, he received a couple of checks in the year 2009 and endorsed the same to Liquid Capital.

Mr. Muñoz admitted that he portrayed to Mr. Machado and Mrs. Arrieta to have a successful company with steady clients like the government and Banco Popular.  However, Mr. Muñoz testified that he lost the Banco Popular account, which was sixty percent (60%) of his business and that's why the business went sour.  Mr. Muñoz stated that at the time he started doing business with Mr. Machado and Mrs. Arrieta in April 2007 his business was doing very good. Mr. Muñoz stated that XeroComSys' income for the year ended July 31, 2007 was $1,701 (Exhibit Y).  He also stated that he had not filed with the State Department the financial statements for the year 2008 because that was the year that it closed and he did not have the money to prepare the statement and he knew beforehand that he would have a loss. Mr. Muñoz stated that for the year 2007 he had income of $57,000 from his salary at XeroComSys (Exhibit W, pg. 20) and for the year 2008 he reported $0 income because

he did not get paid (Exhibit W, pg. 19). The only income he received for the year 2008 was his social security benefits.

Mr. Muñoz stated that he drafted and signed the answer to the state court complaint filed by Liquid Capital (Exhibit I). Mr. Muñoz also testified that a mistake was made on the date XeroComSys ceased operations even though the Statement of Financial Affairs of his bankruptcy petition listed the beginning and ending dates of of XeroComSys as 1992- 07/2007.

Mr. Muñoz testified that his clients would pay most of the time by check every 60-90 days payable to XeroComSys. He also stated that he never received any personal checks generated from the invoices. Mr. Muñoz testified that he stopped making payments to Liquid Capital at the beginning of 2008. He stated that XeroComSys ceased operations in July 2008 and a couple of months after that they were gone from the place that they used to rent. Mr. Muñoz stated that he considers he ceased operations during July 2008 because during that time he lost credit with all the vendors and the bank did not want to renew the credit line so he was unable to purchase merchandise. He also stated that he always deposited the checks that were generated from the factored accounts in the XeroComSys corporate account.

Mr.Muñoz testified that he filed for bankruptcy because he owed a lot of money that he couldn't pay back such as credit cards, personal credit lines, personal guaranties with the banks, and personal guaranties with some vendors.

<u>Uncontested Facts</u>

1. XeroComSys and Liquid Capital entered into a Purchase and Sale Agreement on April 24, 2007. Debtor read the Purchase and Sale Agreement before signing the same. Debtor negotiated and signed the Purchase and Sale Agreement on behalf of XeroComSys and initialed each page of said Agreement. XeroComSyS had a Corporate Resolution which authorized Debtor to negotiate and enter into the Agreement on behalf of XeroComSys. The Corporate Resolution was signed by Debtor as XeroComSys' secretary. Exhibit A.

2. The Debtor signed a Personal Guaranty in conjunction with the Purchase and Sale Agreement on April of 2007. Exhibit B.

3. As a result of signing said Agreement, Liquid Capital paid XeroComSys money for

12

1  established accounts that had receivables for services that were provided by Debtor and/or that Debtor

2  would provide. Liquid Capital did not pay any monies to Debtor. All monies paid by Liquid Capital

3  were made to and received by XeroComSys.

4      4. Given that Liquid Capital paid XeroComSys for those accounts receivables, the clients were

5  supposed to pay Liquid Capital directly pursuant to the Purchase and Sale Agreement.

6      5. If XeroComSys' clients paid Debtor in error for those accounts receivables, XeroComSys

7  had agreed to forward the monies to Liquid Capital within 2 days pursuant to paragraph 10 on page

8  7 of the Purchase and Sale Agreement.

9      6. Notices of Assignment were sent to XeroComSys' client Department of Health dated

10  4/24/2007; 2/27/2008; and 3/11/2008. Exhibit C.

11      7. Notices of Assignment were sent to XeroComSys' client the Treasury Department dated

12  3/20/2008. Exhibit D.

13      8. Notices of Assignment were sent to XeroComsys' client Department of Health-OCASET

14  dated 3/25/2008. Exhibit E.

15      9. XeroComSys invoices #1A25-03 dated 3/04/2008; #1B2207 dated 2/26/2008; #1A31-07

16  dated 3/4/2008; #1C18-04B1 dated 3/18/2008; #1C18-04B1 dated 3/19/2008; #1D18-02 dated

17  4/22/2008; #1E06-03 dated 5/7/2008; #1d28-07 dated 4/28/2008; and #1C28-04 dated 3/31/2008 are

18  genuine and authentic. Exhibit F.

19      10. When those clients paid XeroComSys directly, Debtor did not remit the payments to

20  Liquid Capital.

21      11. Debtor admitted to Liquid Capital's President and Vice-President; namely Mr. Alfredo

22  Machado and Mrs. Lynn Arrieta, that XeroComSys received payments which were due to Liquid

23  Capital.

24      12. Debtor admitted to Liquid Capital's President and Vice-President that he disposed of that

25  money. However, Debtor did not keep or retain any monies belonging to Liquid Capital.

26      13.  Debtor agreed to reimburse Liquid Capital through a payment plan which was signed

27  by Debtor and dated July 10, 2008. The same is genuine and authentic. Exhibit G.

28      14. Debtor did not comply fully with that payment plan.

15. Liquid Capital filed a state court summons and complaint in civil case No. KAC09-0743 on June 15, 2009 against Debtor, Debtor's conjugal partnership, and XeroComSys which is genuine and authentic. Exhibit H.

16. Debtor filed and drafted an answer to the complaint in case No. KAC09-0743 on July 1, 2009. Debtor's answer to the complaint was signed by him and the same is genuine and authentic. Exhibit I.

17. The financing statements are genuine and authentic. Exhibit J.

18. Debtor is the 100% owner of the shares of XeroComSys.

19. There have been no other principals at XeroComSys at any time.

20. Debtor acted as XeroComSys' President.

21. Debtor acted as XeroComSys' Secretary.

22. XeroComSys still exists but is no longer operating.

23. XeroComSys no longer has any assets.

24. Liquid Capital was notified on May 11, 2010 (Docket No. 6) of the bankruptcy proceedings of the case at bar prior to the 341 creditors' meeting.

25. Liquid Capital was represented at the 341 creditors' meeting by attorney Marena S. Ramirez who questioned Debtor at said meeting which was held on June 14, 2010. Mr. Alfredo Machado was also present at said meeting.

26. Debtor stated under oath at the 341 creditors' meeting that XeroComSys ceased operations in July 2007, which is two (2) months after signing the Purchase and Sale Agreement.

27. Liquid Capital was not present nor represented at the confirmation hearing which was held on July 21, 2010 (Docket No. 35). However, said confirmation hearing was rescheduled to July 27, 2010 in which Liquid Capital was represented by its attorneys; namely Marena S. Ramirez and Kenneth C. Suria.

28. Debtor at 64 years of age, has committed all of his disposable income to the confirmed chapter 13 plan for a total of $87,600 to be paid within the next sixty (60) months (Docket Nos. 36 & 37).

29. Debtor filed for bankruptcy on May 8, 2010. The state court judgment was notified post-

14

1  petition on July 12, 2010.

2      30. Debtor stated under oath at the 341 creditors' meeting held on June 14, 2010, that

3  XeroComSys ceased operations in July of 2007, two (2) months after signing the Purchase and Sale

4  Agreement. However, in the first request for admissions, Debtor explained that by error and

5  inadvertence he said July of 2007 instead of July of 2008.

6  Issues

7      This court finds that there are two (2) issues before the court, the second issue is dependent

8  on the outcome of the first. The first issue is; (1) whether confirmation under 11 U.S.C. §1325(a)

9  binds the debtor and all creditors under the terms of the plan pursuant to 11 U.S.C. §1327(a) and

10  moots a motion to dismiss based on bad faith under 11 U.S.C. §1307(c); and the second issue is; (2)

11  whether Mr. Luis Muñoz Marquez filed his bankruptcy petition for an improper purpose and/or bad

12  faith and thus, his case should be dismissed for "cause" pursuant to 11 U.S.C. §1307(c).

13  Applicable Law and Analysis

14  *Res judicata effect of a confirmed plan pursuant to 11 U.S.C. §1327*

15      For a chapter 13 plan to be confirmed, a debtor must satisfy the requirements of 11 U.S.C.

16  §1325(a). Amongst the requirements found in Section 1325 the following are included; (1) "the plan

17  has been proposed in good faith and not by any means forbidden by law;" and (2) "the action of the

18  debtor in filing the petition was in good faith." 11 U.S.C. §1325(a)(3) and (7). Section 1325(a)(7)

19  was enacted by the Bankruptcy Abuse Prevention and Consumer Act of 2005. Section 1325(a)(7)

20  differs from Section 1325(a)(3) because the latter refers to filing a proposed plan in good faith, and

21  the former refers to filing the bankruptcy petition in good faith. "Prior to the 2005 enactment of this

22  provision, some courts found bad faith filing of the petition to be grounds for dismissal of the case.

23  By providing a specific remedy in section 1325(a)(7) for bad faith filing of the petition, Congress has

24  presumably indicated that denial of confirmation, rather than dismissal, is the appropriate way to

25  prevent such conduct." Alan N. Resnick & Henry J. Sommer, 8 Collier on Bankruptcy ¶1325.08 (16th

26  ed. 2011); See also; In re Hieter, 414 B.R. 665, 670 (Bankr. D. Idaho 2009) ("Because BAPCPA

27  effectively codified the good faith filing requirement previously employed in the case law, that case

28  law is applicable to any analysis of §1325(a)(7)"); In re Manno, 2009 Bankr. Lexis 142, fn. 9 (Bankr.

15

1  E.D. Pa. 2009). In In re Torres Martinez, 397 B.R. 158, 165[1] (B.A.P. 1st Cir. 2008), the court implied

2  (in dicta) that subsequent to BAPCPA the requirement that the debtor must file the bankruptcy

3  petition in good faith resides in 11 U.S.C. §1325(a)(7) rather than in 11 U.S.C. §1307(c).

4      Section 1327 provides that, "[t]he provisions of a confirmed plan bind the debtor and each

5  creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such

6  creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. §1327(a). "Section 1327

7  is a strong statement: The terms of a confirmed plan are legal obligations of the debtor and all

8  creditors without regard to whether the plan provides for the creditor's claim and without regard to

9  whether the creditor participated in the confirmation process." Keith M. Lundin & William H. Brown,

10 Chapter 13 Bankruptcy, 4th Edition, §229.1, at ¶ [1], Sec. Rev. Oct. 8, 2010, www.Ch13online.com.

11 The purpose of Section 1327(a) is to give finality to a confirmation order so that all the parties may

12 rely on the same. See Alan N. Resnick & Henry J. Sommer, 8 Collier on Bankruptcy ¶1327.02[1]

13 (16th ed. 2011).  However, the res judicata effect of 11 U.S.C. §1327 may be revoked or eliminated

14 pursuant to 11 U.S.C. §1330. The binding effect of confirmation as res judicata encompasses all the

15 issues that were or could have been litigated by the parties at or before the confirmation hearing. See

16 Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, §229.1, at ¶ [4], Sec. Rev.

17 Oct. 8, 2010, www.Ch13online.com; In re Curtis, 2010 Bankr. Lexis 1252 (Bankr. S. D. Ill. 2010).

18      This court agrees with the case of In re Curtis which held that  filing the petition in good faith

19 is one of the requirements to confirm a plan under 11 U.S.C. §1325(a)(7), thus confirmation of the

20 plan bars litigation or relitigation of the debtor's good faith on a motion to dismiss. See In re Curtis,

21 2010 Bankr. Lexis 1252; Alan N. Resnick & Henry J. Sommer, 8 Collier on Bankruptcy ¶1325.08

22 (16th ed. 2011) ("Moreover, once a plan is confirmed, the confirmation order should constitute a

23

24      [1] "There are two separate and distinct tranches of good faith in Chapter 13 cases. The debtor
must both have filed the Chapter 13 case in good faith and proposed the Chapter 13 plan in good
25 faith. The Bankruptcy Code has always contained the latter requirement and dictated that it be met
in order that a Chapter 13 case could be grounds for dismissal for 'cause' under §1307(c). That
26 changed with BAPCPA. Now, confirmation of a Chapter 13 plan requires a finding as a condition to
plan confirmation that 'the action of the debtor in filing the petition was in good faith.' See 11
27 U.S.C. §1325(a)(7). But that requirement was not applicable to thus pre-BAPCPA case." In re
Torres Martinez, 397 B.R. at 165.
28

16

binding determination that the petition was filed in good faith that precludes granting dismissal on the grounds that the petition was not filed in good faith").

This court finds that in the instant case, Liquid Capital had adequate notice of Debtor's bankruptcy petition and counsel representing Liquid Capital was present at the 341 creditors' meeting and at the confirmation hearing which was held on July 27, 2010 (Docket No. 36). At the beginning of Debtor's chapter 13 confirmation hearing, Liquid Capital expressed that it did not have any objections to Debtor's Chapter 13 plan confirmation and the plan was confirmed (Docket No. 86, Exhibit 4, pg. 7). At the end of the hearing, Liquid Capital stated that it, "...would like to put in the record an objection to the confirmation of the plan. We'll be filing a motion to expand on that" (Docket No. 86, Exhibit 4, pg. 11). This court concludes that Debtor's chapter 13 plan was confirmed since it satisfied all the requirements for plan confirmation pursuant to 11 U.S.C. §1325(a), thus barring litigation of Debtor's good faith in filing the bankruptcy petition. Moreover, an Order confirming a chapter 13 plan is *res judicata* as to all the justiciable issues that were or could have been raised at the confirmation hearing. See In re Estrella, 257 B.R. 114, 118 (Bankr. D.P.R. 2000). Moreover, this court concludes that Liquid Capital's motion to dismiss based on Debtor's bad faith in filing the bankruptcy petition fails to satisfy the totality of the circumstances test which will be discussed herein.

*Dismissal under 11 U.S.C. §1307(c)*

Section 1307(c) provides that, "...on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests if creditors and the estate, for cause." 11 U.S.C. §1307(c). Section 1307(c) enumerates[2] a non-exhaustive list of

---

[2] Amongst the "causes" listed as reasons for dismissal pursuant to 11 U.S.C. §1307(c) the following are included:
"(1) unreasonable delay by the debtor that is prejudicial to creditors;
(2) nonpayment of any fees and charges required under chapter 123 of title 28 [28 USC §§1911 et seq.];
(3) failure to file a plan timely under section 1321 of this title;
(4) failure to commence making timely payments under section 1326 of this title;
(5) denial of confirmation of a plan under section 1325 of this title and denial of a request

1   "causes" for dismissal. Although lack of good faith is not listed as "cause" for conversion or

2   dismissal, the same has been upheld as a reason or cause for conversion or dismissal pursuant to

3   Section 1307(c). See In re Torres Martinez, 397 B.R. at 166 citing Cabral v. Shamban (In re Cabral),

4   285 B.R. 563, 573 (B.A.P. 1st Cir. 2002). The term "good faith" is not defined in the Bankruptcy

5   Code; thus, the good faith inquiry is a fact intensive determination. In re Cabral, 285 B.R. at 572.

6   "Courts differ in their approach in determining a debtor's good faith, but the majority favor a totality

7   of the circumstances analysis." In re Cabral, 285 B.R. at 572. The Bankruptcy Appellate Panel for the

8   First Circuit in In re Cabral, 285 B.R. 563 implicitly adopted the "totality of the circumstances" test

9   to determine whether a debtor lacked good faith under 11 U.S.C. §1307(c) in filing a chapter 13

10  petition. Id. at 572-573; Sullivan v. Solimini (In re Sullivan), 326 B.R. 204, 211 (B.A.P. 1st Cir.

11  2005); In re O'Neal, 2011 Bankr. Lexis 2074 (Bankr. D. Mass. 2011). In applying the "totality of the

12  circumstances" test to determine whether a chapter 13 petition has been filed in bad faith, bankruptcy

13  courts generally consider the following nonexclusive list of factors: (1) the debtor's accuracy in

14  stating his or her debts and expenses; (2) the debtor's honesty in the bankruptcy process, including

15  whether he or she has attempted to mislead the court and whether he or she has made any

16  misrepresentations; (3) whether the Bankruptcy Code is being unfairly manipulated; (4) the type of

17  debt sought to be discharged, (5) whether the debt would be dischargeable in a chapter 7, and (6) the

18  debtor's motivation and sincerity in seeking chapter 13 relief. Gonzalez Ruiz v. Doral Fin. Corp. (In

19  re Gonzalez Ruiz), 341 B.R. 371, 383 (B.A.P. 1st Cir. 2006) citing In re Cabral, 285 B.R. at 573; In

20  ────────────────────────

21           made for additional time for filing another plan or modification of a plan;
     (6) material default by the debtor with respect to a term of a confirmed plan;

22   (7) revocation of the order of confirmation under section 1330 of this title, and denial of
      confirmation of a modified plan under section 1329 of this title;

23   (8) termination of a confirmed plan by reason of the occurrence of a condition specified in
       the plan other than completion of payments under the plan;

24   (9) only on request of the United States trustee, failure of the debtor to file, within fifteen
       days, or such additional time as the court may allow, after the filing of the petition

25       commencing such case, the information required by paragraph (1) of section 521(a);

26   (10) only on request of the United States trustee, failure to timely file the information
     required by paragraph (2) of section 521(a); or

27   (11) failure of the debtor to pay any domestic support obligation that first becomes payable

28       after the date of the filing of the petition." 11 U.S.C. §1307(c).

1   re Dicey, 312 B.R. 456, 459 (Bankr. D. N.H. 2004); In re Virden, 279 B.R. 401, 408 (Bankr. D. Mass.

2   2002).  Moreover, a finding of bad faith does not require fraudulent intent by the debtor. In re

3   Sullivan, 326 B.R. at 212. "Neither malice nor actual fraud is required to find a lack of good faith.

4   The bankruptcy judge is not required to have evidence of debtor ill will directed at creditors, or that

5   debtor was affirmatively attempting to violate the law–malfeasance is not a prerequisite to bad faith."

6   Id. at 212 citing Ho v. Dowell (In re Ho), 274 B.R. 867, 876 (B.A.P. 9th Cir. 2002).  The objecting

7   creditor has the burden of proof under Section 1307(c). See In re Sullivan, 326 B.R. at 212.  The

8   purpose of the "totality of the circumstances test" lies in "whether the debtor is attempting to thwart

9   his creditors, or is making an honest effort to repay them to the best of his ability." Id. at 212 citing

10  In re Virden, 279 B.R. at 409.

11          Liquid Capital argues that Debtor's bad faith is evidenced by his fraudulent conduct, which

12  allegedly consists in the following: (a) Debtor entered fraudulently into a Purchase and Sale

13  Agreement and Personal Guaranty with Liquid Capital two (2) months before he allegedly ceased

14  operations with co-debtor XeroComSys with the intent to deprive Liquid Capital of money before

15  ceasing operations contrary to the negotiations and agreements between the parties; (b) various

16  invoices and letters prove that XeroComSys continued operations after July 2007, thus

17  misrepresenting Debtor's financial condition to this court; (c) Liquid Capital relying on Debtor's

18  untruthful representation that he was in business and operating successfully with the government

19  agencies as his clients, provided monies pursuant to the Agreement; (d) XeroComSys and Debtor

20  provided a sense of false security to Liquid Capital by allowing the same to file UCC filings against

21  XeroComSys' accounts receivables; (e) Debtor retained payments from clients instead of forwarding

22  the same to Liquid Capital as per the contractual terms; (f) Debtor filed the instant bankruptcy

23  proceeding to avoid repercussions against his fraudulent actions against Liquid Capital; and (g) the

24  state court had already ruled in favor of Liquid Capital but it had not rendered judgment against

25  Debtor and co-debtor XeroComSys at the time of Debtor's bankruptcy filing. This court finds that

26  allegations (a) through (d), and (g) are unfounded for the reasons discussed herein. Allegations (e)

27  and (f) will also be discussed in further detail.

28          This court finds that due to XeroComSys' cash flow (liquidity) problem, the Debtor as an

19

1   officer (representative) of XeroComSys, executed a Sale and Purchase Agreement to factor its

2   established accounts receivables, which simply means that Liquid Capital would advance cash on

3   certain of XeroComSys' accounts receivables. Liquid Capital factored XeroComSys' accounts

4   receivables with recourse (as indicated on clause 8 of the Purchase and Sale Agreement), which

5   means that the corporation factoring the receivables agrees to reimburse the factor (Liquid Capital)

6   for uncollectible accounts. Moreover, Mrs. Arrieta testified that Liquid Capital would advance cash

7   on identified accounts receivables pursuant to a Schedule of Accounts (Exhibit O). Mrs. Arrieta

8   explained that the Schedule of Accounts is a document which reflects the monies that were paid to

9   Mr. Muñoz for certain invoices which are listed in said document which is signed by Mr. Muñoz.

10  Moreover, Mrs. Arrieta testified that she would call the companies and confirm the invoices. Both

11  Mrs. Arrieta and Mr. Machado testified that they had no doubt regarding the validity and integrity of

12  the invoices dated subsequent to July 2007.  Consequently, this court fails to find Mr. Muñoz's

13  fraudulent intent in wanting to deprive Liquid Capital of its monies when it executed the factoring

14  agreement, and Liquid Capital's reliance on Debtor's alleged untruthful representation that he was

15  in business and operating successfully with the government agencies, given that Liquid Capital would

16  only provide cash to XeroComSys based on certain established accounts receivables with recourse.

17  Thus, Liquid Capital did not rely on Debtor's representations regarding the success of XeroComSys,

18  because its standard operating procedure was to provide cash based on existing confirmed accounts

19  receivables with recourse.

20      This court finds that XeroComSys was operating after July 2007 which is evidenced by the

21  generation of receivables subsequent to that date and on Debtor's own testimony that the business

22  ceased operations on July 2008, which was almost two (2) years prior to Debtor's chapter 13

23  bankruptcy filing. In fact, Mr. Machado testified that Liquid Capital purchased certain invoices from

24  XeroComSys which are dated early 2008. The court also finds that Debtor did not misrepresent his

25  personal financial condition to the court by incorrectly stating the year XeroComSys ceased

26  operations.

27      This court further concludes Liquid Capital's allegation that, "XeroComSys and Debtor

28  provided a sense of false security to Liquid Capital by allowing the same to file UCC filings against

20

1  XeroComSys' accounts receivables" is unfounded because Liquid Capital failed to file the same with

2  the Puerto Rico Department of State, thus failing to secure its debt against XeroComSys.

3      This court finds that XeroComSys, through Debtor acting as its President (and sole

4  shareholder), breached the terms of the Purchase and Sale Agreement, in particular clause 10[3] of the

5  Purchase and Sale Agreement, since it failed to remit to Liquid Capital the payments received from

6  factored invoices, which XeroComSys used to cover its operating expenses. XeroComSys' action

7  constitutes an "event of default" under clause 11(c)[4] of the Purchase and Sale Agreement. Thus, in

8  the instant case there was definitely a breach of the contractual obligation to remit the payments to

9  Liquid Capital. But this particular contractual breach falls short to establish fraudulent intent by

10  Debtor. See Mitsubishi Motor Sales of Caribbean, Inc. v. Ortiz, 418 B.R. 11 (D.P.R. 2009).  This

11  court notes that Liquid Capital filed suit against XeroComSys and Debtor in state court for collection

12  of monies and breach of contract and the state court rendered summary judgment post-petition based

13  on those causes of action.

14  ————————————

15      [3] Clause 10 of the Purchase and Sale Agreement states: "Payments Received by Seller.
Should seller receive payment of all or any portion of an Account sold pursuant to this Agreement,
16  Seller shall immediately notify Factor of the receipt of the payment, hold said payment in trust for
Factor separate and apart from Seller's own property and funds, and shall deliver said payment to
17  Factor without delay in the identical form in which received. Should seller receive a check or other
instrument of payment representing payment of amounts due to both Factor and Seller, Seller shall
18  surrender said check or payment instrument to Factor. Should Seller receive a check or other
instrument of payment representing payment of amounts due Factor and fail to surrender to Factor
19  said check or payment instrument within two (2) business days, Seller shall be deemed to have
committed a material default in this Agreement. In addition to all other damages to which Factor
20  shall be entitled, Factor shall be entitled, in the event Seller violates its obligations under this
paragraph, to charge Seller a misdirected payment fee equal to ten (10%) percent of the amount of
21  the payment instrument of One Thousand Dollars, whichever is greater, to compensate Factor for
the additional administrative expenses that are likely to be incurred as a result of a breach. In the
22  event any merchandise, the sale of which gave rise to an Account purchased by Factor, is returned
or repossessed by Seller, such merchandise shall be held by Seller in trust for Factor, separate and
23  apart from Seller's own property subject to Factor's sole discretion and control." (Docket No. 51,
24  Exhibit 1).

25
26      [4] Clause 11 of the Purchase and Sale Agreement provides in pertinent part: "Default. The
term "Event of Default" as used in this Agreement shall mean the occurrence of any of the
27  following events: (c) The failure of Seller to, within two (2) business days, deliver to Factor a
28  remittance received by Seller in payment of a purchased Account." (Docket No. 51, Exhibit 1).

21

1      The Debtor accurately reflected in his schedules the unsecured debt that he had with Liquid

2  Capital, and which stemmed from the Personal Guaranty he signed as part of the Purchase and Sale

3  Agreement executed between XeroComSys and Liquid Capital.  Debtor also included in his Statement

4  of Financial Affairs, line item #4, the collection of monies proceeding Liquid Capital had filed against

5  XeroComSys and Debtor in state court. Furthermore, Debtor's schedules reflect that Debtor has

6  substantial debt arising from other secured and unsecured claims. Debtor's Schedule F (Creditors

7  Holding Unsecured Nonpriority Claims) reflects that Debtor has unsecured claims which amount to

8  $262, 268.27, which, in addition Liquid Capital's claim, include claims for credit card debts, personal

9  credit lines, a personal loan with CitiFinancial, claims for merchandise, a car lease as co-debtor of

10  XeroComSys and claims for professional services (Docket No. 15). The Debtor in Schedule D

11  (Creditors Holding Secured Claims) listed secured claims which amount to $807,264.50 which

12  exceed the value of the assets listed in Schedule A (Real Property) which amount to $740,000. The

13  only inaccuracy in Debtor's bankruptcy schedules which Liquid Capital brought before the court was

14  that Debtor listed in the Statement of Financial Affairs, line item #18, that the duration of

15  XeroComSys was from the year 1992 until July 2007. In the 341 creditors' meeting, Debtor also

16  stated that XeroComSys ceased operations in July of 2007.  However, Debtor explained in the first

17  request for admissions and in the evidentiary hearing that it was due to error and inadvertence that

18  he said July 2007 instead of July 2008. This court further finds that Debtor did not seek bankruptcy

19  protection solely to defeat state court litigation, in particular the collection of monies and contractual

20  breach action filed in state court by Liquid Capital.  Moreover, this court notes that it is not unusual

21  for debtors to seek bankruptcy protection due to collection activity taken by creditors in state court

22  and/or due to mortgage foreclosure actions filed in state court.

23      After carefully perusing Debtor's bankruptcy schedules, the exhibits submitted by Liquid

24  Capital and admitted as evidence and going over the testimony of the various witnesses, this court

25  finds that Liquid Capital has failed to satisfy the burden that Debtor's case should be dismissed for

26  bad faith in filing the bankruptcy petition pursuant to Section 1307(c). This court concludes that

27  Debor did not file his bankruptcy petition to manipulate the Bankruptcy Code unfairly nor did he file

28  his chapter 13 petition in an inequitable manner.

1

<u>Conclusion</u>

2       In the case at hand, the court finds and concludes that Debtor's chapter 13 plan was confirmed

3   since it satisfied all the requirements for plan confirmation pursuant 11 U.S.C. §1325(a). Thus,

4   barring litigation of Debtor's good faith in filing the bankruptcy petition, since the Order confirming

5   a chapter 13 plan is *res judicata* as to all justiciable issues that were or could have been raised at the

6   confirmation hearing. The court further finds and concludes that Liquid Capital has failed to satisfy

7   the burden that Debtor's case should be dismissed for bad faith in filing the bankruptcy petition

8   pursuant to Section 1307(c).

9       In view of the foregoing, Liquid Capital's motion to dismiss pursuant to Section 1307(c) based

10   on lack of good faith is hereby DENIED.

11       SO ORDERED.

12   In San Juan, Puerto Rico, this 28th day of September 2011.

13

14                                                       Enrique S. Lamoutte
                                                     United States Bankruptcy Court

15

16

17

18

19

20

21

22

23

24

25

26

27

28